UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

RAUL PICHARDO, et al., on behalf of himself
and all others similarly situated,

                              Plaintiffs,              15-CV-03312 (RA)(SN)

        -against-                                      **REPORT,
                                                       RECOMMENDATION &
CARMINE'S BROADWAY FEAST INC. and                      ORDER**
ALICART, INC. d/b/a/ THE ALICART
RESTAURANT GROUP,

                              Defendants.
-------------------------------------------------------------X
-------------------------------------------------------------X

VALMIR SOUZA, on behalf of himself
and all others similarly situated,

                              Plaintiff,               15-CV-04046 (RA)(SN)

        -against-                                      **REPORT,
                                                       RECOMMENDATION &
CARMINE'S BROADWAY FEAST INC. and                      ORDER**
ALICART, INC. d/b/a/ THE ALICART
RESTAURANT GROUP,

                              Defendants.
-------------------------------------------------------------X
-------------------------------------------------------------X

MANUEL GUZMAN, on behalf of himself
and all others similarly situated,

                              Plaintiff,               15-CV-04049 (RA)(SN)

        -against-                                      **REPORT,
                                                       RECOMMENDATION &
CARMINE'S BROADWAY FEAST INC. and                      ORDER**
ALICART, INC. d/b/a/ THE ALICART
RESTAURANT GROUP,

                              Defendants.
-------------------------------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 6/13/2016 __

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE RONNIE ABRAMS:**

Plaintiffs Raul Pichardo, Melvin Amadiz, Luis Rodriguez, Jose Arcenio Perez, Manuel Guzman, and Valmir Souza (collectively, "plaintiffs") brought three separate putative collective and class action complaints against Carmine's Broadway Feast, Inc., New York, New York, and Alicart, Inc. (collectively, "defendants") for allegedly failing to compensate servers, bussers, bartenders and barbacks for overtime and off-the-clock hours in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and New York Labor Law § 650 *et seq.* ("NYLL"). On October 14, 2015, the Court approved the conditional certification of an FLSA collective consisting of "[a]ll persons who worked or have worked as servers, bussers, barbacks, bartenders at the restaurant known as 'Carmine's' located at 2450 Broadway, New York, New York at any time between August 4, 2012 and the present." ECF Docket No. 19. Before the Court are the plaintiffs' motions to consolidate their actions and to certify the class with respect to the NYLL claims under Federal Rule of Civil Procedure 23.

## BACKGROUND

### I.   Factual Background

The following facts are taken from the plaintiffs' complaints, amended complaint, and affidavits submitted in support of this motion. All of the named plaintiffs worked at Carmine's Broadway Feast, Inc., a restaurant owned by the defendants and located at 2450 Broadway, New York, New York ("Carmine's"). Pichardo worked approximately 60 hours a week as a server; Amadiz worked approximately 45 hours a week as a bartender; Perez worked approximately 45 to 65 hours a week as a busser; Rodriguez worked 35 to 65 hours a week as a busser; Souza worked approximately 50 to 60 hours a week as a server; and Guzman worked approximately 50

hours per week as a server. According to the plaintiffs, from 2009 through 2010 management informed the servers, bussers, bartenders and barbacks that they would be paid only for a maximum of 40 hours per week, regardless of any hours worked in excess of 40. Guzman Aff. ¶ 5; Perez Aff. ¶ 5; Pichardo Aff. ¶ 5; Rodriguez Aff. ¶ 5. Management also required workers to clock-out for meal breaks, even though most employees continued to work through their breaks. Guzman Aff. ¶ 7; Perez Aff. ¶ 7; Perez Aff. ¶ 7; Rodriguez Aff. ¶ 7. After a change in management in late 2010 or early 2011, hourly employees were required to arrive early to their shifts and work off the clock until the beginning of their scheduled shifts. Guzman Aff. ¶ 9; Perez Aff. ¶ 9; Perez Aff. ¶ 9; Rodriguez Aff. ¶ 9. Management also required employees to continue working after they had clocked out at the end of their shifts. Id. Employees were never compensated for this off-the-clock work.

In addition to affidavits submitted by each of the named plaintiffs, the Court received a sampling of time and pay records from 2009 and 2010 for Souza, Perez, Pichardo, and Guzman. Many of these records include handwritten notes which appear to alter the original hours recorded by each plaintiff, resulting in a reduction of the total weekly hours to 40. See Pls.' Reply Br., Clark. Decl., Ex. A–D.

In opposing the plaintiffs' motion for class certification, the defendants submitted declarations from eight current employees. Each declaration was identical, and included two lines where the employees could write-in the number of hours and days that they typically work per week. By signing the declaration, each employee indicated his agreement that he had been paid for all hours worked at Carmine's, including overtime hours, that he had never been asked by a manager or anyone at Carmine's to work without pay or not to record all hours worked, and that he was not permitted to work before or after clocking-out. See Defs.' Opp'n Br., Grindlinger

3

Decl., Ex. 5–12. In one of the eight declarations, the server edited the form declaration to strike the lines stating "whenever I worked more than 40 hours during any given week I was paid overtime for all such hours" and "I have never had a manger or anyone at Carmine's tell me to not work overtime or pressure me to not work overtime." See id., Ex. 12.

In addition to the declarations, defendants submitted payroll records covering a portion of the employment period for each named plaintiff. See Defs.' Opp'n Br., Grindlinger Decl., Ex. 13–18. Defendants also provided the Court with copies of Carmine's weekly payroll records for bartenders, barbacks, bussers, and servers/waiters for select weeks between July 2012 and April 2015. See Defs.' Opp'n Br., Grindlinger Decl., Ex. 19–30.

## II.   Procedural Background

### A.  Federal Court Actions

On April 28, 2015, Pichardo filed a putative class and collective action complaint, asserting four causes of action against the defendants: (1) minimum wage violations pursuant to the FLSA; (2) overtime violations pursuant to the FLSA; (3) unpaid wage violations pursuant to the NYLL; and (4) failure to pay minimum wages pursuant to the NYLL. In his complaint, Pichardo sought to represent "all persons who have been employed by the Defendants as servers in the State of New York since April 28, 2009." Pichardo v. Carmine's Broadway Feast, Inc., 15-cv-3312 (RA)(SN), Compl. ¶ 20. On May 21, 2015, Defendants filed their answer, denying all of Pichardo's material claims.

On May 27, 2015, Guzman and Souza filed separate putative class and collective action complaints against the defendants, asserting the same allegations and causes of action as Pichardo. Guzman and Souza are represented by the same attorneys as Pichardo.

On July 17, 2015, Pichardo filed an amended complaint, adding Amadiz, Rodriguez, and Perez as plaintiffs. He also amended his proposed class to include bartenders and bussers. On July 31, 2015, the defendants filed their answers to the Guzman and Souza complaints, as well as to Pichardo's amended complaint, in which they denied all of the plaintiffs' material claims.

On October 14, 2015, the Court entered a Stipulation and Order applicable to all three cases, approving the conditional certification of an FLSA collective consisting of "[a]ll persons who worked or have worked as servers, bussers, barbacks, [and] bartenders at the restaurant known as 'Carmine's' located at 2450 Broadway, New York, New York, at any time between August 4, 2012 and the present." ECF Docket No. 19. In the order, the Court permitted the plaintiffs to send an approved notice to the stipulated collective and gave such individuals 60 days from the time the notice is sent to exercise their opt-in right. The Court also stayed discovery until the end of the opt-in period.

In anticipation of a mediation session held on September 30, 2015, the defendants provided the plaintiffs with copies of the plaintiffs' time and payroll records and personnel files from the last six years. They also provided the plaintiffs with a sampling of potential class members' time and payroll records from 2012 to 2015. The mediation was not successful.

On November 3, 2015, the plaintiffs filed their motion for consolidation of the three actions and certification of the class of all persons who were employed by Carmine's as servers, bussers, bartenders and barbacks since April 28, 2009.

**B.  State Court Actions**

On October 1, 2015, Pichardo filed a complaint in New York State Supreme Court, New York County, alleging that Carmine's discriminated against him on the basis of his race and color in violation of the New York State Human Rights Law and New York City Human Rights

Law. His complaint includes allegations that kitchen staff and management harassed and discriminated against him. On October 27, 2015, Carmine's filed an answer denying all of Pichardo's material allegations.

Also on October 1, 2015, all of the plaintiffs filed a separate action in New York State Supreme Court, Bronx County, alleging that between 2009 and 2013, Carmine's managers retained a portion of the plaintiffs' gratuities from catering deliveries in violation of the NYLL. On October 27, 2015, Carmine's filed its answer denying all of the plaintiffs' material allegations.

## DISCUSSION

The FLSA requires qualifying employers to pay their non-exempt employees no less than the hourly minimum wage, plus one and one-half times their regular hourly rate for any time worked in excess of 40 hours per week. See 29 U.S.C. § 206(a)(1), 207(a)(1). Additionally, under New York law, employers must "pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to [the FLSA]." N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 142–2.1, 142–2.2; see also N.Y. Lab. Law §§ 198(1–a), 663(1).

## I.   Class Certification under Rule 23

To certify a class, the plaintiff must satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. See Fed. R. Civ. P. 23(a); In re Initial Pub. Offering Secs. Litig., 471 F.3d 24, 32 (2d Cir. 2006). Specifically, the plaintiff must establish:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

> representative parties will fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a). Additionally, "while Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts." In re Methyl Tertiary Butyl Ether ("MBTE") Prods. Liability Litig., 209 F.R.D. 323, 336 (S.D.N.Y. 2002) (quoting Zapka v. Coca-Cola Co., No. 99 Civ. 8238, 2000 WL 1644539, at *2 (N.D. Ill. Oct. 27, 2000) (internal quotation marks removed). This implied requirement, often referred to as "ascertainability," is met if the members of the class can be ascertained by reference to objective, rather than subjective, criteria. See id. at 337.

The Court must also determine whether the class action can be maintained under one of three sets of criteria set forth in Rule 23(b). In this case, the plaintiffs seek to certify the class under Rule 23(b)(3), which permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). If the requirements under Rule 23(a) and 23(b) have been met, the court may certify the class. See In re IPO, 471 F.3d at 41.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 352 (2011). "To certify a class, a district court must make a definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues, must resolve material factual disputes relevant to each Rule 23 requirement, and must find that each requirement is established by at least a preponderance of the evidence." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013) (quoting Brown v. Kelly,

609 F.3d 467, 476 (2d Cir. 2010); Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010))
(internal quotation marks omitted).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) (quoting Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 361 (E.D.N.Y. 2009)). "Where a FLSA collective action based upon the same set of facts has been certified, courts are inclined to grant class certification of related state law claims." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 160 (S.D.N.Y. 2014) (citing Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 392 (S.D.N.Y. 2011)).

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires the plaintiff to show that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this circuit, numerosity is presumed where a class exceeds 40 members. See Jackson, 298 F.R.D. at 162 (citing Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)). The determination of practicability, however, "depends on all the circumstances surrounding a case, not on mere numbers." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). In assessing whether the joinder of all members of a proposed class is impracticable, courts may consider: "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." Id. "The court is not limited in its analysis to the Robidoux factors, however, and is empowered

to make common sense assumptions to support a finding of numerosity." Koss v. Wackenhut Corp., 03 Civ. 7679 (SCR), 2009 WL 928087, at *3 (S.D.N.Y. Mar. 30, 2009) (quoting Nicholson v. Williams, 205 F.R.D. 92, 98 (E.D.N.Y. 2001)) (internal quotation marks omitted).

The plaintiffs have established that between 2009 and 2015, Carmine's employed between 50–60 bartenders, barbacks, bussers, and servers. See Amadiz Aff. ¶ 11; Guzman Aff. ¶ 11; Perez Aff. ¶ 11; Pichardo Aff. ¶ 11; Rodriguez Aff. ¶ 11. The plaintiffs' assertions are further supported by the sampling of payroll records that the defendants produced from between July 15, 2012, to April 12, 2015, which show that Carmine's employed at least 50 potential class members during that time period. Plaintiffs have therefore established by a preponderance of evidence that the number of potential class members exceeds the 40-member threshold.

The defendants argue that the plaintiffs have failed to establish numerosity because they did not address each of the Robidoux factors in their motion for class certification. In their reply brief, the plaintiffs assert that joinder of each member is impracticable due to current employees' fear of retaliation if they join the action against the defendants. In support of this argument, the plaintiffs contend that Pichardo's termination in November 2015, shortly after the Notice for the Collective Action was mailed, was intended to deter potential opt-in plaintiffs from joining the FLSA collective action. They also cite the Declaration of Zechariah Williams, who struck the portion of the document stating that he was paid overtime whenever he worked more than 40 hours a week. See Defs.' Opp'n Br., Grindlinger Decl., Ex. 12. According to the plaintiffs, Williams's declaration demonstrates a fear of retribution if he joins the collective action, and/or a lack of understanding of his rights under the FLSA and NYLL.

As discussed above, the Court is not required to engage in a strict analysis of the Robidoux factors in order to find that the numerosity criteria are satisfied. Applying a common

sense analysis of the evidence, the Court considers that many of the putative class members are current employees of Carmine's who may fear retaliation if they choose to opt-in to the FLSA collective action. See Shahriar v. Smith & Wollensky Rest. Grp., 659 F.3d 234, 244 (2d Cir. 2011) (discussing the NYLL class action as a mechanism for current employees to collect back wages and damages when they fear reprisal for opting-in to a related FLSA collective action); Shayler v. Midtown Investigations, Ltd., 12 Civ. 4685 (KBF), 2013 WL 772818, at *7 (S.D.N.Y. Feb. 27, 2013) (considering whether putative class members were currently employed by the defendants in determining whether joinder was practicable). This "concern regarding employer retaliation or reprisal renders individual joinder less practicable." Shahriar, 659 F.3d at 244 (quoting Sanft v. Winnebago Indus., Inc., 214 F.R.D. 514, 524 (N.D. Iowa 2003)).

Defendants further argue that by stipulating to the FLSA collective action, the "[p]laintiffs have explicitly admitted that joinder is practicable." Defs.' Opp'n Br. 12. This argument, however, overlooks the fact that the collective action arises solely from the plaintiffs' FLSA claims, which extend back only to August 4, 2012. In contrast, the plaintiffs' state law claims stretch back to November 3, 2009, and include allegations that in 2009 and 2010 the defendants had a policy of denying plaintiffs overtime wages and requiring them not to record any hours worked above 40 per week. Certifying a class action for the plaintiffs' NYLL claims would promote judicial economy by avoiding upwards of 60 potential individual actions. The numerosity requirement is therefore satisfied.

### 2. Commonality

To establish commonality, the plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) requires that the plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 564 U.S. at 350. "Commonality may be met even though class members' individual circumstances differ, so long as their injuries derive from a unitary course of conduct." <u>Espinoza</u>, 280 F.R.D. at 124 (quoting <u>Noble v. 93 Univ. Place Corp.</u>, 224 F.R.D. 330, 338 (S.D.N.Y. 2004)) (internal quotation marks omitted). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." <u>Poplawski v. Metroplex on the Atlantic, LLC</u>, 11 Civ. 3765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012).

The plaintiffs present two questions that are common to all members of the proposed class: first, whether the defendants had a policy of denying overtime wages; and second, whether the defendants had a policy of requiring plaintiffs to perform off-the-clock work. These types of questions in wage-and-hour cases are "generally ideal for class resolution." <u>Jackson</u>, 298 F.R.D. at 163 (certifying a class action where plaintiffs presented common questions regarding whether the defendant had common policies of permitting employees to work over 40 hours a week, failing to pay them overtime, and failing to record all hours worked).

The defendants argue that the plaintiffs have failed to satisfy the commonality requirement due to "significant dissimilarities among the experience of putative class members." Defs.' Opp'n Br. 13. Although the defendants commit several pages of their brief to describing their employee-wide compensation policies, they argue that the Court would need to make individualized inquiries for each putative class member in order to determine liability. The defendants cite the declarations submitted by current employees, in which they assert that they

did not work off the clock and that they received compensation for all hours worked, as proof that some employees were paid properly.

Defendants' contention that individualized proof will be necessary to determine the number of hours each class member actually spent working, or whether the class member was denied overtime payment, "confuses liability with damages." Espinoza, 280 F.R.D. at 127 ("Defendants' argument that plaintiffs' 'off-the-clock' claims would require this Court to determine liability on an individualized basis confuses liability with damages."). In the context of satisfying the commonality requirement, the plaintiffs' "claims for relief need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015). The defendants admit—and the plaintiffs do not dispute—that the defendants enforced a common compensation policy for all employees. The defendants' position is that everyone was paid the same and everyone was paid lawfully. The plaintiffs agree that everyone was paid the same, but believe that common policy was illegal. This makes clear that the defendants' arguments speak to the merits of the plaintiff's claims and not to the appropriateness of the class vehicle to address them. The defendants' alleged policy of requiring employees to work before clocking-in or after clocking-out had a common impact on all class members; namely, it deprived class members of a portion of their legally-entitled wages. Similarly, the defendants' alleged policy of tampering with employees' time records in order to avoid paying them at a higher hourly rate denied class members of their overtime wages.

The cases cited by defendants are inapposite to the plaintiffs' claims here. For example, in Romero v. H.B. Automotive Grp., Inc, a single plaintiff sought to certify a class action on

behalf of "all persons employed by Defendants to perform any work . . . who (1) worked in excess of forty (40) hours per week and were not compensated with overtime pay; and/or (2) were not compensated at a rate in accordance with the minimum rate of hours laws." Romero v. H.B. Auto. Grp., Inc., 11 Civ. 386 (CM), 2012 WL 1514810, at *2 (S.D.N.Y. May 1, 2012). The court determined that the central question shared was whether the defendants correctly or incorrectly classified the putative class members as exempt under NYLL. Because the plaintiff sought to certify a class of employees with differing job responsibilities and duties, the court determined that the central, shared question required individualized proof for each putative class member to determine whether each employee was primarily engaged in non-exempt work. The court therefore held that the answer to this question was not capable of classwide resolution, and found that the plaintiff had failed to satisfy the commonality requirement. Id. at *18.

The court in Romero noted, however, that Rule 23 "does not impose upon plaintiffs the impossible task of showing that all class members have identical responsibilities," but rather permits certification "when the evidence shows that the duties of putative class members were largely consistent . . . ." Id. at *19 (quoting White v. Western Beef Properties, Inc., 07 Civ. 2345 (RJD)(JMA), 2011 WL 6140512, at *3 (E.D.N.Y. Decl. 9, 2011)). The court recognized that certification is appropriate where members of the class suffered a similar injury and the plaintiff has presented "significant proof that the employer acted under a general policy to engage in the allegedly unlawful conduct." Id. (quoting Dukes, 564 U.S. at 353) (internal quotation marks omitted); see also Chime v. Peak Sec. Plus, Inc., 137 F. Supp. 3d 183, 208 (E.D.N.Y. 2015) (finding commonality requirement was satisfied where plaintiff submitted evidence that he and proposed class members were subject to the same policy of underpayment and were not paid for pre- and post-shift hours).

Furthermore, the Court may certify a class based on a theory of a common policy of unlawful practice even if there is evidence that some of the putative class members were either not affected or were affected to a lesser degree. See Morangelli v. Chemed Corp., 922 F. Supp. 2d 278, 308 (E.D.N.Y. 2013) (holding that the fact that some plaintiffs were not affected, or affected to different degrees, by the defendant's alleged unlawful practice "does not undermine the plaintiffs' ability to establish liability—*i.e.* to prove that [defendant] altered employee time records for illegitimate reasons—through generalized proof"). The fact that some of the plaintiffs may not have been affected by the defendants' alleged policy does not defeat commonality, but rather presents a merits question that will be resolved at a later stage in the proceedings. See Messner v. Northshore Univ. Health Sys., 669 F.3d 802, 823 (7th Cir. 2012) (holding that whether "some class members' claims ultimately will fail on the merits if and when damages are decided" is a "fact generally irrelevant to the district court's decision on class certification").

Here, the defendants do not contest that the putative class members qualify as non-exempt. Instead, they argue that the plaintiffs have failed to present sufficient evidence of a general policy to deny the putative class members overtime wages or require them to work off the clock. The Court disagrees. In their affidavits, five of the named plaintiffs asserted that between 2009 and 2010, management explicitly told them that they "would only be paid for, at most, 40 hours per week, although [the plaintiffs], and many others, were working well in excess of 40 hours." Amadiz Aff. ¶ 5; Guzman Aff. ¶ 5; Perez. Aff. ¶ 5; Pichardo Aff. ¶ 5; Rodriguez Aff. ¶ 5. These assertions are corroborated by time records submitted for Perez, Pichardo, Souza and Guzman, which show that for select weeks during 2009 and 2010, in which they worked over 40 hours, their weekly hourly totals were often manually crossed out and reduced to 40 hours. See Pls.' Reply Br., Clark Decl., Ex. 1–4. Additionally, payroll records indicate that

between January and November 2010, plaintiffs Perez, Pichardo, and Souza often worked *exactly* 40 hours per week, but rarely worked any hours above that. See Defs.' Opp'n Br., Grindlinger Decl., Ex. 15–17. Starting in November 2010, however, when Carmine's allegedly came under new management, the plaintiffs' weekly hours notably increased and they began receiving frequent overtime payments. Id. The time and payroll records therefore support the plaintiffs' allegation that before late 2010 or early 2011, there was a policy of misreporting hours and denying employees overtime wages.

Plaintiffs also present sufficient evidence in support of their claim that the defendants maintained a policy of requiring employees to work off the clock. In their affidavits, plaintiffs stated that from late 2010 or early 2011 to present, Carmine's management required them to clock-out but continue working through their meal breaks, as well as occasionally to perform work before or after clocking out from their shifts. Amadiz Aff. ¶ 9; Guzman Aff. ¶ 9; Perez Aff. ¶ 9; Pichardo Aff. ¶ 9; Rodriguez Aff. ¶ 9. Due to the nature of the plaintiffs' claim, it is unlikely that any documentary evidence exists showing the defendants' alleged policy of requiring plaintiffs' to perform off-the-clock work. Plaintiffs should not, however, be "penalized for defendants' failure to record the hours worked by employees." Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 371 (S.D.N.Y. 2007); see also Espinoza, 280 F.R.D. at 127 (holding that the commonality requirement was satisfied because the defendants' common policy of altering clock-in and clock-out times had a common impact on all class members). Accordingly, the plaintiffs have satisfied the commonality requirement.

### 3.  Typicality

"The requirements of commonality and typicality tend to merge, because both serve as guideposts for determining whether the named plaintiff's claim and the class claims are so inter-

related that the interests of the class members will be fairly and adequately protected in their

absence." In re NYSE Specialists Secs. Litig., 260 F.R.D. 55, 70 (S.D.N.Y. 2009) (quoting Velez

v. Novartis Pharm. Corp., 244 F.R.D. 243, 257 (S.D.N.Y. 2007)) (internal quotation marks

omitted). "Typicality requires that the claims of the class representatives be typical of those of

the class." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed

Care, L.L.C., 504 F.3d 229 (2d Cir. 2007) (quoting Robinson v. Metro-N. Commuter R.R. Co.,

267 F.3d 147, 155 (2d Cir. 2001)). The typicality requirement serves to "ensure that a class

representative has the incentive to prove all the elements of the cause of action which would be

presented by the individual members of the class were they initiating individualized actions." In

re NYSE Specialists Secs. Litig., 260 F.R.D. at 71 (quoting In re NASDAQ Market-Makers

Antitrust Litig., 172 F.R.D. 119, 126 (S.D.N.Y. 1997)) (internal quotations marks omitted).

"When it is alleged that the same unlawful conduct was directed at or affected both the named

plaintiff and the class sought to be represented, the typicality requirement is usually met

irrespective of minor variations in the fact patterns underlying the claims." Schear v. Food Scope

Am., Inc., 297 F.R.D. 114, 124 (S.D.N.Y. 2014) (quoting Robidoux, 987 F.2d at 936–37).

"[D]ifferences among the Plaintiffs as to the number of hours worked, the precise work they did,

and the amount of pay they received concern the amount of damages to which any individual

[p]laintiff might be entitled if and when liability is found, not the amenability of the plaintiffs'

claims to the class action form." La Belle Farm, Inc., 239 F.R.D. at 371 (quoting Ansoumana v.

Gristede's Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001)) (internal quotation marks

omitted).

　　　　The typicality requirement is satisfied because the alleged harms suffered by the plaintiffs

are typical of those of the class they seek to represent. All putative class members were

employed by the defendants as hourly employees and allegedly subjected to the same employment practices and policies. Defendants argue that the plaintiffs have failed to present sufficient evidence supporting their contention that the plaintiffs' claims go beyond their individual circumstances and would apply to other Carmine's employees. In support of this argument, they analogize to a case in which class certification was denied because the plaintiffs presented evidence that only one employee had been denied her share of tips. See In re Starbucks Employee Gratuity Litig., 264 F.R.D. 67, 75 (S.D.N.Y. 2009). Here, in contrast, the plaintiffs presented affidavits from five employees, each of whom claimed that Carmine's policy of denying overtime payment and requiring employees to work off the clock applied to other servers, bussers, bartenders and barbacks. See Amadiz Aff. ¶ 12; Guzman Aff. ¶ 12; Perez. Aff. ¶ 12; Pichardo Aff. ¶ 12; Rodriguez Aff. ¶ 12. Additionally, in the affidavit submitted by the defendants, current Carmine's employee server Zechariah Williams edited the form affidavit to cross out the lines stating "whenever I worked more than 40 hours during any given week I was paid overtime for all such hours" and "I have never had a manger or anyone at Carmine's tell me to not work overtime or pressure me to not work overtime," ostensibly indicating his disagreement with the veracity of these statements. See Defs.' Opp'n Br., Grindlinger Decl., Ex. 12. Because "proof consisting of employees' declarations is regularly held sufficient to establish commonality and typicality," Chime, 137 F. Supp. 3d at 209, the plaintiffs have also satisfied the typicality requirement.

### 4.  Adequacy

To satisfy Rule 23(a)(4)'s adequacy requirement, the plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A class representative must be part of the class and possess the same interest and

suffer the same injury as the class members." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625–26 (1997) (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)). The adequacy inquiry is twofold: "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." Denney v. Deutsche Bank AG, 443 F. 3d 253, 268 (2d Cir. 2006). The adequacy requirement "applies to both the proposed class representative as well as to their retained counsel." Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp., 222 F.3d 52, 60 (2d Cir. 2000). The Court therefore must determine whether the plaintiffs' attorneys are "qualified, experienced and able to conduct the litigation." Id.

Defendants argue that the plaintiffs' two state court actions present conflicts of interest that preclude the plaintiffs from satisfying the adequacy requirement. According to the defendants, the potential for favorable settlements in the plaintiffs' state court actions might undermine the plaintiffs' loyalty to the putative class. In support of this proposition, the defendants cite a Northern District of Ohio decision in which the court found a conflict of interest because the plaintiffs had brought identical, individual actions against the defendants in state court. See Kurczi v. Eli Lilly & Co., 160 F.R.D. 667, 678–79 (N.D. Ohio 1995). The court expressed concern that the state actions would "pose a risk . . . to settlement and dismissal decisions" and "remove incentives for the named plaintiffs to conduct diligent research" in the class action. Id. Defendants also argue that Pichardo's discrimination claims are adverse to the interests of members of the putative class because he alleges that he was harassed and discriminated against by fellow Carmine's co-workers.

"Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." 1 William

Rubenstein, Newberg on Class Actions § 3:58 (5th Ed. 2012). <u>See also</u> <u>Denney</u>, 443 F.3d at 268 ("A conflict or potential conflict alone will not . . . necessarily defeat class certification—the conflict must be fundamental"). In contrast to the facts in the <u>Kurczi</u> case, the plaintiffs have not brought identical individual actions in state court, but rather have raised separate and distinct allegations of withholding tipped wages for catering deliveries and employment discrimination. The Court is not satisfied that a separate lawsuit initiated by a proposed class representative against the defendant in the putative class action necessarily creates a "fundamental" conflict of interest. <u>See</u> <u>Stoneback v. ArtsQuest</u>, 12-cv-03287, 2013 WL 3090714, at *12 (E.D. Pa. Jun. 20, 2013); <u>but see</u> <u>Levias v. Pac. Maritime Ass'n</u>, 08-cv-1610-JPD, 2010 WL 358499, at *6 (W.D. Wash. Jan. 25, 2010) (noting that named plaintiff's separate lawsuit against the defendants in a putative class action "could potentially create a conflict with the putative class").

Apart from the existence of the named plaintiffs' separate state court lawsuits, the defendants have not presented any evidence supporting their contention that the plaintiffs' state court actions create a conflict of interest with their proposed federal class action. The plaintiffs' state action involves withheld tips from catering deliveries. Such claims are entirely distinct from the general minimum wage and overtime claims brought here. Given that there is no legal or factual overlap between these two cases, the potential for the type of conflict the defendants' posit is insufficient to justify the extraordinary conclusion that these plaintiffs are inadequate to represent the class.

Likewise, in his discrimination lawsuit, Pichardo specifically alleges harassment and discrimination by kitchen workers and managers, none of whom is included in the proposed class. To date, Pichardo has vigorously pursued these FLSA and NYLL claims and the defendants merely speculate that he will abandon them in exchange for a quick settlement in his

state court discrimination case. If that eventuality should come to pass, the other class

representatives could adequately prosecute the claims without Pichardo. Thus, the plaintiffs have

satisfied the adequacy requirements.

 The defendants have raised no objection to the plaintiffs' counsel's ability to represent

the proposed class. The plaintiffs' attorneys specialize in labor and employment litigation law

and have expressed that they are "ready, willing and able" to represent the putative class. Blit

Decl. ¶ 5. The second prong of the adequacy inquiry is satisfied.

### 5. Ascertainability

 In addition to Rule 23's explicit requirements for class certification, courts in this circuit

generally also impose an "implied requirement" of ascertainability. See In re IPO, 471 F.3d at

30; Stinson v. City of N.Y., 282 F.R.D. 360, 373 (S.D.N.Y. 2012); In re Fosamax Products Liab.

Litig., 248 F.R.D. 389, 395 (S.D.N.Y. 2008). "An identifiable class exists if its members can be

ascertained by reference to objective criteria." In re MTBE" Products Liab. Litig., 209 F.R.D. at

337. The purpose of the ascertainability requirement is to ensure that the class is "sufficiently

definite so that it is administratively feasible for the court to determine whether a particular

individual is a member." Stinson, 282 F.R.D. at 373 (quoting Casale v. Kelly, 257 F.R.D. 396,

406 (S.D.N.Y. 2009)). "The standard for ascertainability is not demanding" and it is "designed

only to prevent the certification of a class whose membership is truly indeterminable." Stinson,

282 F.R.D. at 373–74 (quoting Gortat v. Capala Bros., Inc., 07 Civ. 3629 (ILG), 2010 WL

1423018, at *2 (E.D.N.Y. Apr. 9, 2010)).

 The members of the proposed class are easily identifiable from the defendants'

employment and payroll records. The Court rejects the defendants' argument that the plaintiffs

failed to identify the members of the proposed class in the class certification brief. On the first

two pages of their brief, plaintiffs repeatedly state that their claims pertain to all "servers, bussers, bartenders, and/or barbacks" who worked at Carmine's during the statutory period. Unlike the cases cited by the defendants, in which class certification was denied because identification of class members would have required the court to conduct individualized factual inquiries for each potential class member, the proposed class here contains individuals who are easily identifiable through payroll and employment records. See Ramirez v. Riverbay Corp., 39 F. Supp. 3d 354, 366 (S.D.N.Y. 2014) (holding that the implied requirement of ascertainability was satisfied because members of the class could be ascertained by reference to date of employment and information from payroll records).

Defendants also argue that the proposed class is overly broad because it includes individuals who were not harmed and do not have valid NYLL claims. They cite to Messner v. Northshore Univ. Healthsystem, in which the defendants argued that the proposed class was overbroad because it included a number of members who could not have been harmed by the defendants' allegedly unlawful conduct. In Messner, the court highlighted a "critical" distinction between instances where certain class members were not harmed, versus instances where certain class members could not have been harmed. Messner, 669 F.3d at 824–25. The court explained that even "if a proposed class consists largely (or entirely, for that matter) of members who are ultimately shown to have suffered no harm, that may not mean that the class was improperly certified but only that the class failed to meet its burden of proof on the merits." Id. at 824. In contrast, if "the class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." Id. (emphasis added).

Although "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant . . . [s]uch determinations are a matter of degree and will turn on the facts of the case." Id. at 825. The defendants argue that because some putative class members assert that they were paid properly, the class is defined too broadly and certification should be denied. The employee declarations submitted by the defendants represent only eight out of approximately 60 putative class members and are insufficient to defeat certification. Defendants may wish to submit these declarations at a later stage in the litigation to refute the claim that Carmine's had a general policy of depriving hourly employees of overtime wages and requiring them to work off the clock. At the class certification stage, however, the declarations fall short of establishing that there are a "great many" class members who "could not" have been harmed by the defendants' alleged unlawful general policy.

Finding that the plaintiffs have satisfied the requirements for class certification under Rule 23(a), the Court now proceeds to the second prong of the class certification analysis.

**B.  Rule 23(b)**

**1.  Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc., 521 U.S. at 623. "The predominance requirement is more demanding than the commonality requirement in Rule 23(a); Plaintiff must show that the case is subject to generalized proof applicable to the class as a whole." Espinoza, 280 F.R.D. at 125 (quoting Eldred v. Comforce Corp., 3:08-CV-1171, 2010 WL 812698, at *19 (N.D.N.Y. Mar. 2, 2010)). "[A] court examining predominance must assess (1) the elements of the claims and defenses to be litigated, and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof

will be needed to establish each class member's entitlement to relief." <u>Johnson</u>, 780 F.3d at 138 (quoting McLaughlin on Class Actions § 5:23) (internal quotation marks omitted).

"Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof." <u>Id</u>. at 138 (citing <u>Augustin v. Jablonsky (In re Nassau County Strip Search Cases)</u>, 461 F.3d 219, 227 (2d Cir. 2006)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3), even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 136 S.Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–24 (3d ed. 2005)).

In opposition to the plaintiffs' motion, defendants argue that individualized inquiries regarding actual hours worked and whether or not class members received overtime wages predominate over common issues. They argue that "'off-the-clock' claims are precisely the type of claims which courts have repeatedly held are improper for class treatment because they would require an individualized liability analysis for each putative class member's claim." Defs.' Opp'n Br. at 20. Similarly, defendants argue that in instances where class members have received overtime payments for some weeks, but not others, courts have held that there is no predominance for overtime claims because individual inquiries into the hours worked by each class member would be necessary to determine liability.

The predominance requirement is satisfied here. In the decision cited by the defendants, the Court of Appeals found that the plaintiffs had failed to satisfy the predominance inquiry because they had not presented sufficient evidence showing that the specific job duties of the

plaintiffs were common to those of all general managers. See Myers., 624 F.3d at 550. The court

thus held that the question of whether proposed class members were non-exempt, and therefore

entitled to overtime pay, could only be answered by examining each employee's actual duties.

Id. Here, in contrast, the plaintiffs have presented evidence attesting to the defendants' practice

and policy of depriving class members of overtime wages and requiring them to work off the

clock. Although the defendants provided the Court with a sampling of payroll records from 2012

to 2015 as evidence that Carmine's paid employees overtime wages, the defendants failed to

produce any records from 2009 to the end of 2010, the period during which the plaintiffs' time

and payroll records appear to indicate that they were often docked any hours worked above 40

and deprived overtime wages. The facts of this case are therefore distinguished from those set

forth in Myers. The issues of whether employees were paid for all hours worked and whether

they were deprived overtime wages are common to the entire class and predominate over

individualized inquiries.

### 2. Superiority

As a final requirement, plaintiffs must show that a "class action is superior to other

available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P.

23(b)(3). "Courts routinely hold that a class action is superior where . . . potential class members

are aggrieved by the same policies, the damages suffered are small relative to the expense and

burden of individual litigation, and some potential class members are currently employed by the

defendants." Fonseca v. Dircksen & Talleyrand Inc., 13 Civ. 5124 (AT), 2015 WL 5813382, at

*6 (S.D.N.Y. Sept. 28, 2015).

"[C]ourts in the Second Circuit routinely certify class actions in FLSA matters so that

New York State and federal wage and hour claims are considered together." Damassia v. Duane

Reade, Inc., 250 F.R.D. 152, 163 (S.D.N.Y. 2008) (quoting Duchene v. Michael L. Cetta, Inc.,

244 F.R.D. 202, 204 (S.D.N.Y. 2004) (citing a string of cases certifying class actions where

plaintiffs brought both NYLL and FLSA claims)). In opposition to the plaintiffs' motion,

defendants argue that the pursuit of an administrative remedy is superior to a civil class action.

There is no requirement in the New York Minimum Wage Act that plaintiffs must exhaust

administrative remedies before bringing a civil action for unpaid wages and overtime. See

Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 358 (E.D.N.Y. 2015); NYLL § 663(1).

Defendants argue that filing a complaint with the New York State Department of Labor would

cost plaintiffs nothing, and therefore save the class money in litigation expenses. This argument

overlooks the fact that the plaintiffs are also bringing allegations under the FLSA. Consolidating

the federal and state claims into a single action conserves judicial resources and prevents the

possibility of subsequent litigation of the class members' state law claims. The superiority

requirement therefore is satisfied.

Because the plaintiffs have satisfied the class certification requirements under Rule 23,

the plaintiffs' request to certify the proposed class should be granted.

## II.    Tolling of the Statute of Limitations

The plaintiffs request that the Court toll the statute of limitations for the claims of the

absent class members from the date of the filing of the class certification motion. Pursuant to the

doctrine established in American Pipe and Construction Co. v. Utah, "the commencement of a

class action suspends the applicable statute of limitations as to all asserted members of the class

who would have been parties had the suit been permitted to continue as a class action." 414 U.S.

538, 554 (1974). The defendants have raised no objections to the tolling of the statute of

limitations. Accordingly, the plaintiffs' request for tolling should be granted.

### III.    Consolidation of Actions

The plaintiffs also move to consolidate the three wage and hour actions separately brought against the defendants. Under Rule 42, parties may consolidate civil cases if the "actions before the court involve common questions of law or fact." Fed. R. Civ. P. 42(a). "The trial court has broad discretion to determine whether consolidation is appropriate" and "considerations of judicial economy favor consolidation." Johnson v. Celotex Corp., 899 F.2d 1281, 1284–85 (2d Cir. 1990).

Consolidation of the three actions is appropriate in this case. As discussed above, plaintiffs' claims raise common issues of law and fact. The defendants do not oppose the consolidation of the actions. Defs.' Opp'n Br. 1, n.1. The plaintiffs' request to consolidate the three related cases therefore is granted.

### IV.    Proposed Class Notice

The plaintiffs request that the Court order the defendants to provide the plaintiffs with documents identifying potential class members and also order that the proposed class notice be sent to all potential class members. See Pls.' Mot. 7–8. The defendants request leave to state their objections to the language in the plaintiffs' proposed class notice. See Defs.' Opp'n Br. 23, n.2.

The defendants' request to be heard on the plaintiffs' proposed class notice is granted. The parties are directed, in the first instance, to meet and confer regarding the notice language. If agreement cannot be reached, the defendants may file a letter of not more than three pages within two weeks of today's date. The plaintiffs may respond within one week thereafter. If necessary, the Court may hold a brief telephone discussion to address disputed issues. No notice will be issued until any objections are considered by the Hon. Ronnie Abrams. In addition, while such objections are under judicial review, the defendants should be working to prepare a list of the

names and last known addresses of the class members. If Judge Abrams adopts the Court's

recommendation, the defendants will have one week to provide plaintiffs with the names and last

known addresses of the class members. Such information, however, need not be provided unless

and until Judge Abrams has adopted the Court's recommendation.

## CONCLUSION

For the foregoing reasons, the Court recommends certification of a class under NYLL of

"all persons who have been employed by the Defendants as servers, bussers, bartenders, and/or

barbacks in the State of New York since April 28, 2009." The Court also recommends the tolling

of the statute of limitations for the claims of the absent class members from the date of the filing

of the class certification motion.

The Court grants the plaintiffs' request to consolidate the three actions. These cases shall

now proceed under docket number 15-CV-03312.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         June 13, 2016

\*           \*           \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation

to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules

of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service

is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another

party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Abrams. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).