```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/23/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAUL PICHARDO, *et al.*, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

CARMINE'S BROADWAY FEAST INC.
and ALICART, INC. d/b/a/ THE ALICART
RESTAURANT GROUP,

Defendants.

No. 15-CV-3312 (RA)
No. 15-CV-4046 (RA)
No. 15-CV-4049 (RA)

ORDER ADOPTING
REPORT AND RECOMMENDATION

---

RONNIE ABRAMS, United States District Judge:

Plaintiffs in these three related FLSA collective actions move for consolidation and class certification under Federal Rule of Civil Procedure 23 for their New York Labor Law ("NYLL") claims, and tolling of absent class members' NYLL claims. On November 16, 2015, this Court referred the motions to Magistrate Judge Netburn, and on June 13, 2016, Judge Netburn issued a Report, Recommendation, and Order (the "Report") consolidating the cases and recommending that this Court certify the Rule 23(b) class and toll the claims of absent class members. Defendants objected to the class certification determination on July 11, 2016 (the "Objections" or "Obj."), and Plaintiff responded to the Objections on August 8, 2016. For the reasons that follow, Judge Netburn's well-reasoned Report is adopted in its entirety. The Court assumes familiarity with the underlying facts and repeats them here only where relevant to the below analysis.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 72 governs the standard by which the district court reviews pretrial orders by a magistrate judge. On non-dispositive motions, "[t]he district judge in the case

must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(a). On dispositive motions, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). "Where a party timely objects to a Report and Recommendation, the district court reviews those portions of the report to which the party objected *de novo*" but "[t]o accept those portions of the report to which no timely objection has been made, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *Pabon v. Colvin*, No. 14-CV-1954 (PAE), 2015 WL 5319265, at *2 (S.D.N.Y. Sept. 11, 2015) (quoting *Carlson v. Dep't of Justice*, No. 10-CV-5149 (PAE), 2012 WL 928124, at *1 (S.D.N.Y. Mar. 19, 2012)).

In their Objections, Defendants argue that this Court should review the Report for clear error. *See* Obj. at 7.[1] A motion for class certification under Rule 23 is, however, considered a dispositive motion; this Court will therefore review any portions of the Report to which Defendants object *de novo*. *See Haas v. Verizon New York, Inc.*, No. 13-CV-8130 (RA), 2015 WL 5785023, at *2 (S.D.N.Y. Sept. 30, 2015); *see also Menking ex rel. Menking v. Daines*, 287 F.R.D. 174, 177 (S.D.N.Y. 2012); *Mazur v. Olek Lejbzon & Co.*, No. 05-CV-2194 (RMB) (DF), 2005 WL 3240472, at *2 n. 1 (S.D.N.Y. Nov. 30, 2005).

## DISCUSSION

For a class action to be certified under Rule 23, it must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, where the proposed class relief is predominantly money damages, the Court must

---

[1] As Defendants did not number the pages of their Objections, page citations are to the electronic filing page numbers.

consider whether common issues predominate over individual ones, and whether a class action is superior to alternative methods of adjudication. Fed. R. Civ. P. 23(b)(3).

Defendants make five objections to the Report.[2] They argue (i) that, in evaluating numerosity, the Report erred in finding that "joinder of all the putative class members is impracticable due to [plaintiffs'] alleged fear of retaliation"; (ii) that, with respect to the commonality, typicality, and predominance requirements, the Report should have "require[d] individualized, and not generalized, proof"; (iii) that the Report erred in concluding that the named Plaintiffs were adequate to represent the class in light of the other lawsuits Plaintiffs have pending in state court; (iv) that the Report should have found the class unascertainable because it was too broadly defined; and (v) that, by failing to consider Defendants' affidavits, the Report did not properly rely on the preponderance of the evidence standard. Obj. at 7, 19.

As the Court finds each of these objections unconvincing after a *de novo* review, and no clear error in the remainder of the Report, Plaintiffs' motion for consolidation, class certification, and tolling is granted.

I.   **Numerosity**

Defendants first object to the Report's numerosity determination. To establish numerosity, plaintiffs must establish by a preponderance of the evidence that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. 23(a)(1). As Defendants acknowledge, "the case law . . . support[s] the possible use of [a] 'common sense' framework" to determine the practicability of joinder. Obj. at 12–13.

---

[2] Although Defendants frame their arguments as six objections, they raise the same arguments as to commonality and typicality as they do for predominance. *See* Obj. at 22 ("[f]or the reasons the Report erred and was contrary to law in its findings regarding the commonality and typicality requirements, . . . it is wrong on the predominance element which is judged under the more demanding criterion."). The objections on commonality, typicality, and predominance are thus considered together.

Defendants argue that Judge Netburn erred in concluding that, because Defendants' current employees may be deterred from bringing individual claims for fear of retaliation, joinder is impracticable. Obj. at 12. In particular, Defendants object to the Report's purported reliance on an erroneous interpretation of the declaration of Zechariah Williams. *Id.* at 13. They argue that the Report wrongly concluded that Williams feared his employer's retribution because certain portions of his Declaration were crossed out, when, according to Defendants, an "equally plausible explanation for these cross-outs . . . is the fact that [Williams] was a part-time employee and generally . . . would not be entitled to any overtime." *Id.* But the Report did not in fact rely on such an interpretation of the Williams declaration; rather, it merely noted that, "[a]*ccording to the plaintiffs*, Williams's declaration demonstrates a fear of retribution if he joins the collective action, and/or a lack of understanding of his rights under the FLSA and NYLL." Report at 9 (emphasis added). Moreover, as Plaintiffs correctly note, Judge Netburn cited other evidence of potential retaliation. *See* Pls.' Resp. at 2. The Report notes, for example, that lead plaintiff Raul Pichardo was terminated in November 2015, "shortly after the Notice for the Collective Action was mailed," Report at 9, a fact that Defendants do not dispute in their Objections. As courts in this circuit routinely conclude that joinder is impracticable even without specific evidence of possible retaliation, the evidence proffered together with the fact that many putative class members are current Carmine's employees suffices to show, by a preponderance of the evidence, that joinder would be impracticable here. *See, e.g.*, *Gortat v. Capala Bros.*, 257 F.R.D. 353, 363 (E.D.N.Y. 2009) (finding impracticability because "[s]ome of the purported class members are the present employees of Capala Bros. and thus would presumably be hesitant to bring their own actions for fear of reprisal by the company" and "many if not most of the purported class members are persons with inadequate resources to exercise their rights by prosecuting their own claims"); *Damassia v.*

4

*Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[I]t may be that in the wage claim context, 'the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action,' insofar as 'many employees will be reluctant to participate in the action due to fears of retaliation.'" (quoting *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG), 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008))); *Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194, 204 (E.D.N.Y. 2005) ("[J]oinder of all members of the class is impracticable, as many may be reluctant to serve as named plaintiffs in an action against the home where they live for fear of reprisals.").

## II. Commonality, Typicality, and Predominance

Defendants next object to the Report's determination that Plaintiffs satisfied Rule 23(a)'s commonality and typicality requirements, and Rule 23(b)'s predominance requirement. As Defendants raise the same objections as to these three requirements, and because "the inquiries into commonality, typicality, and predominance overlap," *Wynn v. New York City Hous Auth*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016); *see also Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 609 (1997) ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions."), the Court will address these objections together.

"'[C]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury'"; the Court must therefore "assess whether the common questions are capable of 'generat[ing] common answers apt to drive the resolution of the litigation.'" *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's

5

liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). And predominance exists "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

The Report found these prerequisites to certification satisfied because common issues exist regarding Defendants' compensation policy, which—according to both Plaintiffs and Defendants—was applied consistently to all employees. *See* Report at 12. Plaintiffs proffered evidence in the form of affidavits and payroll records indicating that Defendants had a stated policy (i) from 2009 to late 2010 or early 2011 of paying for only forty hours of work even when employees worked more, and (ii) from late 2010 or early 2011 to 2015 requiring off-the-clock work before and during the workday. *See* Report at 14–15. Defendants contest these claims and counter that "[e]mployees are prohibited from performing any work before they clock-in or after they clock-out," and that "Carmine's pays [non-exempt] employees an overtime premium equal to one and one-half times the employee's regular rate." Decl. of Jeffery Bank ¶¶ 9, 14. The Report aptly summarized the dispute as follows: "[t]he defendants position is that everyone was paid the same and everyone was paid lawfully," while "plaintiffs agree that everyone was paid the same, but believe that common policy was illegal." Report at 12. Based on the evidence and arguments, the Report found a common issue as to whether or not Defendants had an unlawful compensation policy, which could be resolved with generalized proof. *Id.* As such, Judge Netburn concluded that the requirements of commonality, typicality, and predominance were satisfied. *Id.* at 10–11, 15–16, 23.

This Court agrees. Courts considering similar claims of unlawful payment policies routinely certify classes based on evidence of a common policy. *See Reyes v. City of Rye*, No. 13-CV-9051 (NSR), 2016 WL 4064042, at *7 (S.D.N.Y. July 28, 2016) ("Generalized proof of the Defendants' policies and practices will resolve the common questions in this action—in short, whether Defendants violated the FLSA and/or NYLL by withholding or failing to provide overtime wages . . . ."); *Lizondro-Garcia*, 300 F.R.D. at 177 ("Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies 'are about the most perfect questions for class treatment.'" (quoting *Iglesias–Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) ("Here, all members of the class are unified by common factual allegations that Defendant had a policy of not paying Class Members overtime premium pay for hours worked over 40 in a workweek . . . . They are also unified by a common legal theory—that these policies violated the NYLL. These common issues predominate over any issues affecting only individual Class Members."); *Frederick v. Dreiser Loop Supermarket Corp.*, No. 06-CV-15341 (AKH), 2008 WL 4724721, at *1 (S.D.N.Y. Oct. 24, 2008) (finding commonality, typicality, and predominance met where "Plaintiffs have made a sufficient factual showing that they . . . were denied overtime wages pursuant to a common policy"); *Toure v. Cent. Parking Sys. of New York*, No. 05-CV-5237 (WHP), 2007 WL 2872455, at *8 (S.D.N.Y. Sept. 28, 2007) ("The Court finds that questions of law and fact-namely, the existence of an unlawful policy of denying overtime pay to parking attendants at One Penn Plaza-predominate over questions affecting only individual members."); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011) (approving class certification where "[Defendant] has not denied that all servers were subject to its uniform tip practices, and Plaintiffs support the allegation that all class plaintiffs

were subject to the same uniform tip practices"). The Court sees no basis to depart from this precedent.

Defendants make three arguments challenging the Report's conclusion that Plaintiffs have satisfied the commonality, typicality and predominance requirements. First, they argue that the Report improperly relied on Plaintiffs' declarations to establish proof of common questions, without "properly considering the declarations submitted by the Defendants as evidence that *no such general unlawful policy existed at all.*" Obj. at 15. Defendants claim to have "shown through their declarations that there was no policy whatsoever (or at the very least, a dispute as to the existence of such a policy or who it applied to)," and that, therefore, "the individual question for each class member" is "[d]id Defendants apply an unlawful policy regarding overtime or off-the-clock work *to that specific class member.*" *Id.* at 16. These contentions, however, are not a basis to disturb the Report's conclusions. To the extent Defendants argue that they will prove to the jury's satisfaction that no illegal policy existed for any Plaintiff, their ability to proffer such evidence only reinforces the Report's conclusion that the class's claims may be resolved by generalized proof. If, on the other hand, Defendants contend that, even if Plaintiffs can prove the existence of a common policy, some workers were ultimately paid the proper amount because, *inter alia*, they worked under forty hours, such differences in the class members may be addressed by individualized damages, and do not militate against class certification. *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) ("[T]he Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement.").

Second, Defendants assert that Judge Netburn "failed to specifically address the authority cited by [them]." Obj. at 17. Judge Netburn, however, did address these cases, *see* Report at 12–13, and, in any event, they are inapposite. In three of the cases cited by Defendants—*Gordon v.*

8

*Kaleida Health*, 299 F.R.D. 380 (W.D.N.Y. 2014), *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278 (N.D. Tex. 2008), and *O'Donnell v. Robert Half Internationl, Inc.*, 250 F.R.D. 77 (D. Mass. 2008)—the courts found class certification inappropriate because plaintiffs proffered no evidence of a generally applicable unlawful payment policy. *Gordon*, 299 F.R.D. at 403 ("Plaintiffs have offered no meaningful evidence of a system-wide Kaleida policy that results in employees working through meal periods without pay."); *Proctor*, 250 F.R.D. at 282 ("[T]here is no evidence of a single decision, policy, or plan that is causing the Plaintiffs to work off the clock."); *O'Donnell*, 250 F.R.D. at 81 ("The plaintiffs have not offered evidence that . . . an 'unspoken' policy exists."). Here, by contrast, the Plaintiffs supported their allegations of an illegal pay policy with affidavits and payroll records. *See* Report at 14–15. *Letouzel v. Eastman Kodak Co.*, No. 05-CV-6464T, 2006 WL 1455478 (W.D.N.Y. May 25, 2006), is also distinguishable. There, the court found a lack of predominance because plaintiffs worked at different stores and were subject to different state laws, *id.* at *3, whereas the class here consists of employees from one restaurant subject only to the NYLL. Similarly, *Diaz v. Electronics Boutique of America, Inc.*, No. 04-CV-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005), is not analogous because it concerned a proposed class of both exempt and non-exempt employees, *id.* at *6, whereas the class here involves only non-exempt employees, Report at 14. And finally, *Freeland v. AT&T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006), is an antitrust case and inapposite to the case as bar. *Id.* at 156. None of these cases undermine the Report's conclusion.

Third, Defendants argue that the Report erred in accepting that Plaintiffs' theory of liability constituted a "unitary course of conduct" given that the Report recognized that Defendants changed their payment policies in 2010. Obj. at 18 (quoting Report at 11). According to Plaintiffs, prior to 2010, Defendants allegedly "manipulat[ed] Plaintiffs' hours so that they were only paid

for a maximum of 40 hours per week," whereas after that date, Defendants would pay overtime wages but mandated that Plaintiffs "work off-the-clock." Obj. at 18. Based on this alleged change in illicit policy, Defendants argue that, "[a]t best, Plaintiffs allege that their injuries stem from two separate courses of conduct that occurred during two different time periods," and it follows that injuries to the proposed class members "neither stem from a 'uniform course of conduct' nor a policy that existed throughout the entire proposed class period." *Id.* at 18-19. But this argument misinterprets the Rule 23 requirements. The commonality, typicality, and predominance requirements are not concerned with whether Defendants' illegal practices shifted over time, but whether those policies applied uniformly to the class. *See, e.g., Ballinger v. Advance Magazine Publishers, Inc.*, No. 13-CV-4036 (HBP), 2014 WL 7495092, at *4 (S.D.N.Y. Dec. 29, 2014) ("[P]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'" (quoting *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 126 (E.D.N.Y.2003)). Because Plaintiffs purport to be injured by the same course of conduct—even if it was one that shifted over time— the Report properly certified the class.[3]

As Defendants' three Objections are unavailing, the Court adopts the Report's finding that Plaintiffs have satisfied the commonality, typicality, and predominance requirements.

---

[3] Defendants also assert that the Report improperly concluded that "the mere fact that the Plaintiffs' *alleged* a common unlawful policy . . . was enough to sustain the Plaintiffs' burden." Obj. at 14 (citing Report at 11–12). The Report, however, did not so conclude. Although it did cite precedent indicating that "[i]n wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices," Report at 11 (quoting *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *7 (E.D.N.Y. Apr. 2, 2012)), it ultimately relied on Plaintiffs' affidavits in which "five of the named plaintiffs asserted that between 2009 and 2010 management explicitly told them they would only be paid for, at most, 40 hours per week, although [the plaintiffs], and many others, were working well in excess of 40 hours." *Id.* at 14 (quoting Amadiz Aff. ¶ 5; Guzman Aff. ¶ 5; Perez. Aff. ¶ 5; Pichardo Aff. ¶ 5; Rodriguez Aff. ¶ 5). The Report thus relied upon evidence beyond the allegations in Plaintiffs' complaints.

### III. Adequacy

Defendants next object to the Report's adequacy analysis. The inquiry into "[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members. A conflict or potential conflict alone will not, however, necessarily defeat class certification—the conflict must be 'fundamental.'" *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir.2001)) (internal citations omitted).

Defendants contend that the Report failed to recognize a fundamental conflict created by the named Plaintiffs' other lawsuits, in particular, two actions in New York state court for withheld tips filed by all named Plaintiffs and a discrimination suit in New York state court filed by Plaintiff Raul Pichardo. Relying on two out-of-circuit cases, Defendants contend these suits present a fundamental conflict because "the potential exists for a favorable settlement in individual actions brought separately by the class representatives against the same defendant(s) that might undermine the loyalty of the plaintiffs to the putative class." Obj. at 19 (citing *Levias v. Pac. Mar. Ass'n*, No. 08-CV-1610 (JPD), 2010 WL 358499, at *6 (W.D. Wash. Jan. 25, 2010); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 678 (N.D. Ohio 1995)). They further argue that Pichardo's individual discrimination suit makes him adverse to the class because he may offer proof of discrimination by absent class members. *Id.*

With respect to the state court actions for withheld tips, this Court cannot find that the conflict is so "fundamental"—as opposed to "merely speculative or hypothetical"—so as to render the proposed class representatives inadequate. *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 259 (2d Cir. 2011) (internal citation omitted). In *In re Lloyd's American*

11

*Trust Fund Litigation*, No. 96-CV-1262 (RWS), 1998 WL 50211 (S.D.N.Y. Feb. 6, 1998), defendants made a similar argument, asserting that the potential lead plaintiff's "role in a separate action . . . presents a conflict of interest that disqualifies him as a class representative" because, among other things, "his settlement objectives here may be compromised by potential recoveries in the [other] action." *Id.* at *9. Judge Sweet rejected this argument, reasoning that "there is no present conflict, and the potential for a conflict is too speculative at this point to disqualify [the potential lead plaintiff]. "Of course, if a conflict does develop at a later time, he could be decertified." *Id.* at *10. Although the facts in *Lloyd*'s differ in certain respects from the instant case, its reasoning applies here with equal force: Defendants' argument that some conflict may arise in the future is too speculative to defeat class certification, and, in the event a conflict does arise, the option of decertification remains available.

Defendants' arguments that Pichardo's individual discrimination claim may create a conflict at some point in the future is even more speculative. At present, Pichardo attests he has "no known conflicts with any class member" and that he is "ready, willing, and able" to prosecute the case." Pichardo Aff. ¶¶ 14–15. As there is no record evidence to the contrary, he is also an adequate class representative.

IV.     **Ascertainability**

Defendants also argue that the Plaintiffs have failed to meet the implied requirement of "ascertainability," Obj. at 21, which requires a class "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member," *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks and citation omitted). They argue that the proposed class "is indeed overly broad because it includes individuals who could not have been harmed nor have valid NYLL claims." [*sic*] Obj at 21. In

support of this argument, Defendants point out that the class as it is defined includes eight Carmine's employees who have submitted affidavits indicating that they were paid legally. According to Defendants, this establishes that the proposed class is overbroad.

Defendants cite *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012), in support of this argument, a case that "drew a distinction between," Obj. at 21, (a) classes that were ascertainable despite including members "who *were not* harmed" by the defendant's alleged misconduct, and (b) classes that were overbroad and thus unascertainable because they included a subset of members "who *could not* have been harmed." 669 F.3d at 825. In *Messner*, plaintiffs brought a putative class action alleging antitrust violations following the merger of two healthcare providers, 669 F.3d at 802, and, like here, defendants opposed class certification on the grounds that the class was not ascertainable. The Seventh Circuit rejected defendants' challenge to the class on the grounds that the class included a potential plaintiff who submitted an "affidavit stating, without any real explanation, that it 'did not pay artificially inflated prices' and did not suffer 'any injury or damage.'" *Id.* at 822. This was, it explained, "at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification." *Id.* at 823. The court however, nonetheless recognized that a class could be overbroad if it included too many potential plaintiffs who *could not* have been harmed. If, for example, the proposed class had included a category of plaintiffs who paid the defendant exclusively under pre-merger contracts, which predated any alleged anti-competitive practices, "that class obviously could not be certified [because] it would contain a vast number of people who could not have been harmed by the merger because they purchased the medical services in the absence of market power allegedly created by the merger." *Id.* at 824–25.

13

Here, the potential plaintiffs who submitted affidavits are directly analogous to the first category of potential plaintiffs in *Messner*, namely, those whose claims—if Defendants are successful—"will fail on the merits if and when damages are decided." *Id.* at 822. There is no basis for the Court to conclude, however, that the proposed class contains a large number of members who were never in a position to be harmed by Defendants' purportedly unlawful payment policy. The Court thus adopts the Report's recommendation that the class is sufficiently ascertainable.

V.   **Preponderance of the Evidence**

Finally, Defendants assert that the Report did not properly apply the preponderance of the evidence standard because Judge Netburn purportedly disregarded the employee declarations submitted by Defendants. Obj. at 8–9. They assert that Judge Netburn's "[F]actual [B]ackground" section ignored their declarations and that "many of the Magistrate Judge's findings in her recommendation that Plaintiff's Class Motion should be granted relied heavily on this acceptance of Plaintiffs' affidavits and the ignoring or rejection of Defendants' declarations." *Id.* at 8–9. Defendants do not explain how this altered the outcome of the Report's determination on the particular Rule 23 requirements, except to say, "[a]s will be discussed below regarding the commonality and typicality requirements of FRCP 23, Defendants presented admissible evidence through the eight declarations of employees that the restaurant in fact paid its employees properly and *did not* possess such a common policy or unitary course of conduct of any unlawful pay practice." *Id.* at 11–12.

As a preliminary matter, Defendants' objection that the Report did not sufficiently weigh its evidence, without any explanation as to how it affected the Report's conclusions, is too general to trigger *de novo* review. *See Watson v. Geithner*, No. 11-CV-9527 (AJN), 2013 WL 5441748,

at *2 (S.D.N.Y. Sept. 27, 2013) ("[A] district judge may review for clear error any portions of a magistrate's recommendations to which only 'conclusory or general' objections are made."); Report at 3 (discussing the affidavits submitted by Defendant). In any event, as discussed above, the Court has reviewed the Report—and taken into account the declarations submitted by Defendants—and agrees that each Rule 23 requirement has been met by the preponderance of the evidence.

      Lastly, to the extent Defendants suggest that the Report should have concluded from their declarations that they did not have an unlawful payment policy, such an argument speaks to the merits of Plaintiffs' claims and not to class certification. Although it is appropriate for a district court to resolve factual issues necessary to decide certification, it was not necessary to reach the ultimate question of whether Defendants indeed had an unlawful policy to determine that Plaintiffs' proposed class would satisfy the Rule 23 requirements by a preponderance of the evidence. *See Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). Thus, as the Report applied the appropriate standard, Defendant's objection is unavailing.

## CONCLUSION

Having rejected Defendants' objections after a *de novo* review, and finding no clear error in the portions of the Report to which Defendants did not object, the Court adopts Judge Netburn's Report in full. It is therefore ORDERED that (i) a class is certified under NYLL consisting of "all persons who have been employed by the Defendants as servers, bussers, bartenders, and/or barbacks in the State of New York since April 28, 2009"; (ii) absent class members' claims are tolled; and (iii) the actions are consolidated into lead case 15 Civ. 3312 (RA) (SN). Report at 27. The Clerk of Court is respectfully directed to close docket entry 20 in case 15 Civ. 3312.

Dated:    September 23, 2016
         New York, New York

_____
Ronnie Abrams
United States District Judge